# UNITED STATES DISTRICT COURT
for the
Western District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Samsung Galaxy S7 cell phone (828) 817-6763 /<br>IMEI: 3553000072573095 | ) ) ) ) ) ) ) Case No. 1:20-mj-00038 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ___Western___ District of ___North Carolina___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2251(b) | Production of Child Pornography |
| 18 USC 2252A(a)(5)(B) | Possession of Child Pornography |

The application is based on these facts:

See accompanying Affidavit.

☒ Continued on the attached sheet.
☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Scheafer M. Farmer
*Applicant's signature*

Scheafer M. Farmer, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P 4.1 by (telephone)

Signed: June 10, 2020

W. Carleton Metcalf
United States Magistrate Judge

Date: 6/10/2020

City and state: Asheville, North Carolina

The Hon. W. Carleton Metcalf, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

| | | |
|---|---|---|
| IN THE MATTER OF THE | ) | |
| SEARCH OF THE FOLLOWING: | ) | |
| A SAMSUNG GALAXY S7 CELL PHONE WITH | ) | |
| PHONE NUMBER (828) 817-6763 AND | ) | CASE NO. |
| IMEI 3553000072573095 | ) | |

I, Scheafer M. Farmer, being duly sworn, depose and state the following:

1. I am a Special Agent (SA) with the United States Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have been so employed from August 1998, to the present. I am currently assigned to the HSI Hendersonville, North Carolina office. As part of my official duties, I have conducted and participated in investigations related to the sexual exploitation of children. I have also received training and instruction in the field of investigating child pornography to include distribution and possession. As part of my duties and responsibilities as an HSI SA, I am authorized to investigate crimes involving the sexual exploitation of children pursuant to Title 18 United States Code, Section 2251, et seq.

2. As a result of my training and experience, I am familiar with methods employed by individuals engaged in various illegal activities, including interstate transportation of child pornography. I am also aware from my training and experience that persons engaged in interstate transportation of child pornography typically use false identities and other techniques to disguise themselves and their enterprise. I am further aware, as a result of my training and experience that child pornography is not generally available in retail establishments, even from those which offer other explicit sexual material. Persons who wish to obtain child pornography do so by ordering and/or obtaining it by discreet contact with other individuals and underground businesses that have child pornography collections.

3. This investigation involves the production and possession of child pornography across state

boundary lines through the use of computers and the Internet. All such transmissions must go through Internet Service Providers servers, where the said Internet Service Provider temporarily stores such transmissions.

4. This affidavit is submitted in support of an application for a search warrant for a Samsung Galaxy S7 Wireless cell phone utilizing phone number (828) 817-6763 and with IMEI: 3553000072573095 (hereinafter MOBILE DEVICE). This MOBILE DEVICE is believed to be owned by an individual named Roger McINTOSH, and is currently in the custody of the North Carolina State Bureau of Investigations (NCSBI), Asheville, North Carolina.

5. Your Affiant is personally familiar with the facts and circumstances surrounding this investigation, both from his own investigative activities, and from information obtained from other law enforcement officers/agencies.

6. As more fully described below, your Affiant has probable cause to believe that presently and/or at the time of this warrant's execution, evidence of child pornography, and evidence linking Roger McINTOSH to child pornography production and possession will be found inside the following item: Samsung Galaxy S7 Wireless cell phone utilizing phone number (828) 817-6763 and with IMEI: 3553000072573095. I have reason to believe these items will be found inside the MOBILE DEVICE and constitute evidence of the commission of the crime of certain activities relating to production of child pornography in violation of Title 18, United States Code, §§ 2251(b) and 2252A(a)(5)(B) - possession of, knowing access, conspiracy to access, or attempted access with intent to view child pornography. Such items are evidence, contraband, the fruits of crime and things otherwise criminally possessed, property designated or intended for use or which is or has been used as the means of committing a criminal offense.

7. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that evidence of violations of

Title 18, United States Code, Section 2252A(a)(5)(B), which relate to the knowing possession of child pornography is presently located in the above listed items.

## RELEVANT STATUTES

8. This investigation concerns alleged violations of Title 18, United States Code, Sections 2251(b) and 2252A(a)(5)(B), relating to material involving the sexual exploitation of minors.

9. Title 18, United States Code, Section 2251(b) makes it a federal crime for any parent, legal guardian, or person having custody or control of a minor who knowingly permits such minor to engage in, or to assist any other person to engage in, sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct shall be punished as provided under subsection (e) of this section, if such parent, legal guardian, or person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

10. Title 18, United States Code, Section 2252A(a)(5)(B) makes it a federal crime for any person to knowingly possess, or access with intent to view, one or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means, including by computer.

## DEFINITIONS

11. The following definitions apply to this Affidavit:

12. "Child Pornography" includes the definition in 18 U.S.C. § 2256(8) (any visual depiction

of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).

13. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

14. "Minor" means any person under the age of eighteen years. See 18 U.S.C. § 2256(1).

15. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person. See 18 U.S.C. § 2256(2).

16. "Internet Service Providers" or "ISPs" are commercial organizations which provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers, including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer various means by which to access the Internet including telephone based dial-up, broadband based access via a digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth that the connection supports. Many ISPs assign each subscriber an account name such as a user name or screen name, an e-mail address, and an e-mail mailbox, and the subscriber typically creates a password for the account. By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her account name and password.

17. An Internet Protocol address (or simply "IP address") is a unique numeric address used by

computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

18. "Log Files" are records automatically produced by computer programs to document electronic events that occur on computers. Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors. Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

19. "Hyperlink" refers to an item on a web page which, when selected, transfers the user directly to another location in a hypertext document or to some other web page.

20. "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

21. "Uniform Resource Locator" or "Universal Resource Locator" or "URL" is the unique address for a file that is accessible on the Internet. For example, a common way to get to a website is to enter the URL of the website's home page file in the Web browser's address line. Additionally, any file within that website can be specified with a URL. The URL contains the name of the protocol to be used to access the file resource, a domain name that identifies a specific computer on the Internet, and a pathname, a hierarchical description that specifies the location of a file in that computer.

22. The terms "records", "documents", and "materials", as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

23. "Smart Phone", a Smart Phone is a mobile phone that utilizes a mobile operating system similar to the way a traditional computer uses an operating system to function. Smart Phones are typically capable of storing various types of media files, including image, video and audio files; of accessing the Internet through wireless or cellular data connections and Internet browsing software; of capturing still images and video through integrated cameras built into the device; of accessing electronic mail accounts; and providing services utilizing the Global Positioning System.

24. "Memory Card," a memory card of flash card is an electronic flash memory data storage device used for storing digital information. They are commonly used in many electronic devices, including digital cameras, mobile phones, laptop computers, MP3 players, and video game consoles. They are small, re-recordable, and able to retain data without power.

## BACKGROUND REGARDING THE INTERNET

25. I have been formally trained in the investigation of crimes involving the sexual exploitation of children. I also own my own computer, have personal knowledge of the operation of a computer, and have accessed the Internet since approximately September 1998. Based on this training and knowledge,

and the experience of other law enforcement personnel involved in this investigation, I know the following:

26. The Internet is a worldwide computer network that connects computers and allows communications and the transfer of data and information across state and national boundaries. A user accesses the Internet from a computer network or Internet Service Provider ("ISP") that connects to the Internet. The ISP assigns each user an Internet Protocol ("IP") Address. An IP address is a series of four numbers separated by a period, and each number is a whole number between 0 and 255. An example of an IP address is 192.168.10.102. Each time an individual access the Internet, the computer from which that individual initiates access is assigned an IP address. A central authority provides each ISP a limited block of IP addresses for use by that ISP's customers or subscribers. Most ISP's employ dynamic IP addressing, that is they allocate any unused IP address at the time of initiation of an Internet session each time a customer or subscriber accesses the Internet. A dynamic IP address is reserved by an ISP to be shared among a group of computers over a period of time. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet. The ISP logs the date, time and duration of the Internet session for each IP address and can identify the user of that IP address for such a session from these records, depending on the ISP's record retention policies.

27. Photographs and other images can be used to create data that can be stored in a computer. This storage can be accomplished using a "scanner", which is an optical device that can recognize characters on paper and, by using specialized software, convert them to digital form. Storage can also be captured from single frames of video and converted to an image file. After the photograph or other image has been scanned into the computer, the computer can store the data from the image as an individual "file". Such a file is known an image file. Computers are capable of displaying an image file as a facsimile of the original image on a computer screen.

28.     The computer's capability to store images in digital form makes it an ideal repository for child pornography.  A single floppy or compact disk can store dozens of images and hundreds of pages of text.  The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years.  Hard drives with the capacity of 1 terabyte (1,000 gigabytes) are not uncommon.  These drives can store thousands of images at very high resolution.  Magnetic storage located in host computers adds another dimension to the equation.  It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country.  Once this is done, there is no readily apparent evidence at the "scene of the crime".  Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

29.     With Internet access, a computer user can transport an image file from the Internet or from another user's computer to his own computer, so that the image file is stored in his computer.  The process of transporting an image file to one's own computer is called "downloading".  The user can then display the image file on his computer screen and can choose to "save" the image on his computer and or print out a hard copy of the image by using a printer device (such as a laserjet or inkjet).

30.     Importantly, computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet.  Electronic files downloaded to a hard drive can be stored for years at little to no cost.  Even when such files have been deleted, they may be recoverable months or years later using readily available forensic tools.  When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space – for long periods of time before they are overwritten.  In addition, a computer's operating system

may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

## BACKGROUND OF INVESTIGATION

31. On or about May 12, 2020, HSI Hendersonville, North Carolina Special Agents (SAs) were contacted by the SBI, Asheville, North Carolina for assistance after they had received an investigative lead from the Polk County Sheriff's Office (PCSO) located in Columbus, North Carolina.

32. An investigation by the PCSO revealed that a fifteen (15) year-old minor female victim, herein referred to as victim one "MV1", had been sexually assaulted by an adult male, Roger McINTOSH. During the investigation McINTOSH was identified as the boyfriend of MV1's biological mother. At the time of the investigation, McINTOSH lived with MV1, MV1's mother, and MV1's half-brother at a residence in Mill Spring, North Carolina. The investigation revealed McINTOSH utilized a Samsung Galaxy S7 cellular phone with phone number (828) 817-6763 and IMEI: 3553000072573095 to produce pornographic images of MV1.

33. On April 30, 2020, at approximately 10:30 AM, PCSO received a telephone call regarding the sexual assault of MV1. The caller identified herself as Jenny Bowyer. She stated that her half-brother (later identified as Roger McINTOSH) was possibly molesting a child.

34. During the call, Bowyer explained that she and MV1's mother had discovered a hand-written note, believed to have been written by MV1, requesting assistance from her mother and law enforcement. The note was found in MV1's mother's vehicle. Bowyer explained that she and VM1's mother were located in the parking lot of the Dollar General located 7854 NC-9N, Mill Spring, NC in

Polk County, North Carolina, and law enforcement soon responded to that location. Bowyer stated that she and MV1's mother were both very fearful of McINTOSH.

35. PCSO Detective Sergeant Cannon and Captain Williams traveled to the Dollar General to meet with Bowyer and MV1's mother. Upon arrival, MV1's mother presented the note from her daughter to Detective Sergeant Cannon and Captain Williams. The note stated: "Mom I need you to call the police. Dad has been touching and molesting me ever since I was Six!! Please."

36. While in the parking lot, Detective Sergeant Cannon and Captain Williams conducted an interview of MV1's mother. MV1's mother stated that she and McINTOSH were not married, and that MV1 was not McINTOSH's biological daughter. However, MV1's mother stated that she and McINTOSH have a nine (9) year-old minor male child together. MV1's mother stated that McINTOSH had always been extremely controlling with MV1 and that this control was not exhibited in a "normal way." MV1's mother stated that McINTOSH would not allow MV1 to have any boyfriends and did not allow MV1 to have any contact with fellow male students.

37. During the interview, MV1's mother stated that McINTOSH had displayed acts of domestic violence within the household. MV1's mother stated that McINTOSH has told her in the past, that if she ever tried to leave him, that she could go, but MV1 would stay with him and that he would do whatever it would take to make that happen. MV1's mother informed investigators that both MV1 and her half-brother were currently alone at the residence with McINTOSH.

38. Detective Sergeant Cannon and Captain Williams called for a PCSO marked unit to go with detectives and MV1's mother to their residence in Mill Springs, North Carolina. Detectives suggested that both MV1 and her half-brother be removed from the residence for their safety.

39. Upon arriving at the residence, Detective Sergeant Cannon and Captain Williams, followed by MV1's mother, entered the home and observed as MV1's mother escorted both children out of the residence. MV1's mother was instructed to follow officers to the Polk County Sheriff's Office.

40. On April 30, 2020, at approximately 1:14 PM, Detective Sergeant Cannon conducted a forensic interview of MV1. MV1 stated that she attends Lake Lure Classical Academy and is currently in Grade 10. VM1 stated that McINTOSH does not allow her to have any male or female friends. MV1 clarified to Detective Sergeant Cannon that when she says "Dad" she is talking about McINTOSH. MV1 stated they have lived in Polk County for about 5 to 6 years. Detective Sergeant Cannon asked MV1 if she was knowledgeable about how babies were made, and MV1 that she did and correctly named the male and female reproductive organs. MV1 stated that she loves her mom very much but does not like McINTOSH. MV1 stated McINTOSH is a mean drunk and becomes violent when he consumes alcohol. She stated that McINTOSH normally carriers out the discipline in the household, and that McINTOSH has smacked her in the face in the past.

41. During the interview MV1 stated that due to participating in social distancing, McINTOSH has not been working which has added additional emotional and financial stress on the family. MV1 stated they stay up all hours of the night watching tv and then sleep until 3pm. She further disclosed that her mom has been working long hours and does not get to see her very much.

42. While still conducting the interview, Detective Sergeant Cannon presented MV1 with the note she had left for her mother. MV1 confirmed she authored the note and that McINTOSH has been having sex with her since she was six (6) years old. She informed Detective Sergeant Cannon that McINTOSH has sex with her in either her bedroom or on the couch in the living room. MV1 stated McINTOSH makes her take off her own clothes, and then McINTOSH will place his penis into her vagina. MV1 further disclosed that McINTOSH has made her put his penis in her mouth. MV1 stated that she is not currently taking birth control but that McINTOSH wears condoms while having sex. She stated the condoms have broken a couple of times, but that McINTOSH will make her take medication to prevent pregnancy. MV1 stated that when McINTOSH has sex with her, McINTOSH positions himself on top of her. She stated that she has told McINTOSH multiple times to stop because it is not right. In response

McINTOSH has told her that since they are not related by blood that it was okay. MV1 told Detective Sergeant Cannon that McINTOSH has threaten to kill her if she told anyone about the sexual intercourse.

43. MV1 further stated that McINTOSH has performed oral sex on her, and that her mother has been home asleep sometimes when these incidents occur. MV1 stated that McINTOSH has made her have sex with him during her period. MV1 stated that having sex with MCINTSOH in the beginning would hurt, but there is little discomfort now. VM1 stated MCITNSOH will discard the condom by placing it in a cigarette box and putting in the trash can.

44. MV1 disclosed that McINTOSH will make her watch videos of adults having sex with him, and the last time she could recall watching these types of videos with McINTOSH would have been about five days prior to the interview.

45. Detective Sergeant Cannon asked MV1 when the last time McINTOSH had sex with her was. Using a calendar provided by Detective Sergeant Cannon, MV1 indicated that the last time McINTOSH forced her to have sex with him was on April 23, 2020.

46. MV1 wrote and provided a signed written statement to Detective Sergeant Cannon at the Polk County Sheriff's Office. At the conclusion of the interview, Detective Sergeant Cannon applied for and received a State search warrant (reference case number 2020-008781) to obtain and examine the MOBILE DEVICE location data information of McINTOSH as to his location(s) and whereabouts on April 23, 2020.

47. On or about May 7, 2020, SA Meadows, with the NCSBI, Asheville, North Carolina, received the signed State search warrant from Detective Sergeant Cannon with the Polk County Sheriff's Office. SA Meadows is a member of the NCSBI Computer Crimes Unit.

48. On May 7, 2020, SA Meadows conducted a forensic examination of the MOBILE DEVICE utilizing XRY v.8.12 by Microsystemation software. While looking for geotagged images for EXIF/location data, SA Meadows observed an image depicting child pornography. The file name was

3e44029bd4d48c904466d30fab1c5096.0.jpeg and depicted a nude female, approximately 14 to 17 years of age wearing a white watch. The female is sitting on a white bed with her legs spread and inserting a pink object into her vagina. The wall in the background of the picture was teal and pink.

49. SA Meadows indicated that the nude minor female in the image in the file appears to be MV1. SA Meadows based this assessment on comparisons between the background of the room which matched the pictures of MV1's bedroom taken by Detective Sergeant Cannon during the execution of the search warrant. On May 14, 2020, Detective Sergeant Cannon reviewed a partial image of the file provided by SA Meadows and confirmed and attested that the image in the file appeared to be that of MV1.

50. On May 22, 2020, HSI Hendersonville Special Agent Scheafer Farmer met with SA Meadows at the NCSBI office in Asheville, North Carolina and reviewed file name 3e44029bd4d48c904466d30fab1c5096.0.jpeg. On this same date, HSI SA Scheafer Farmer reviewed the digital file and determined the file constituted child pornography as defined in Title 18, United States Code, Section 2256. HSI SA Scheafer Farmer concurs and attests to the description of file 3e44029bd4d48c904466d30fab1c5096.0.jpeg. provided by SA Meadows.

## CONCLUSION

51. Based on the foregoing facts, I respectfully submit that there is probable cause to believe child pornography, as set forth in the search warrant affidavit, will be found on the MOBILE DEVICE.

52. Your Affiant respectfully requests that a warrant be issued authorizing HSI Special Agents, with appropriate assistance from other law enforcement personnel and/or agencies to seize the MOBILE DEVICE and search the above referenced items as more specifically described in ATTACHMENT B.

*This affidavit has been reviewed by SAUSA Alexis Solheim.*

/S/ Scheafer M. Farmer
Date: June 8, 2020
Special Agent, Scheafer M. Farmer
Homeland Security Investigations

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 10th Day of June, 2020, at 1:10PM EDT.

Signed: June 10, 2020

_W. Carleton Metcalf_
W. Carleton Metcalf
United States Magistrate Judge

## ATTACHMENT A

## SUBJECT PROPERTY TO BE SEARCHED

One (1) Samsung Galaxy S7 cell phone (828) 817-6763 / IMEI: 3553000072573095 MOBILE DEVICE, owned by Roger McIntosh and currently in the custody of the North Carolina State Bureau of Investigations, Asheville, North Carolina.

# ATTACHMENT B

## ITEMS TO BE SEIZED

1. All electronic files containing child pornography and images of child pornography in any form, information or correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. 2256 and records or other items which evidence ownership or use of computer that is currently saved on the MOBILE DEVICE.

2. Records, documents, writings, and correspondences with others pertaining to the production, possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct.

3. Any and all, photographs, letters, written narratives and computer text files or electronic matter to show or evidence a sexual interest in minors or desire or motive to advertise, distribute, transport, receive, collect or possess visual depictions of minors engaged in sexually explicit conduct.

4. Any and all records showing or bearing indicia of the use, ownership, possession, or control of the item described in Attachment A.

5. Electronic mail, chat logs, and electronic messages, offering to distribute and receive visual depictions of minors engaged in sexually explicit conduct, or to show or evidence a sexual interest in minors or desire or motive to advertise, distribute, transport, receive, collect and possess visual depictions of minors engaged in sexually explicit conduct.

6. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, letters, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to,

software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

7. Storage combinations, and passwords, which indicate any other storage containers or facilities that could contain evidence of collection, advertising, transport, distribution, receipt, or possession of child pornography.

8. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

9. Visual depictions, in whatever form, including digital, of minors engaged in sexually explicit conduct.